# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

RSUI Indemnity Company,

    Plaintiff,

v.

New Horizon Kids Quest, Inc.,

    Defendant.

Civ. No. 16-28 (RHK/TNL)

**MEMORANDUM OPINION AND ORDER**

James Richard Harmon, Jo Allison Stasney, Thompson, Coe, Cousins & Irons LLP, Dallas, Texas, James S. Reece, Reece Law LLC, Minneapolis, Minnesota, for Plaintiff.

Vernle C. Durocher, Jr., Katie C. Pfeifer, Brian B. Bell, Dorsey & Whitney, LLP, Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

In this insurance-coverage action, Plaintiff RSUI Indemnity Company ("RSUI") seeks a judgment declaring it need not indemnify its insured, Defendant New Horizon Kids Quest, Inc. ("New Horizon"), for damages resulting from an incident at a child-care facility New Horizon operated. Presently before the Court are the parties' cross-Motions for Summary Judgment. For the reasons that follow, the Court will grant New Horizon's Motion and deny RSUI's Motion.

## BACKGROUND

The relevant facts are undisputed. New Horizon operates a child-care facility, Kids Quest, located in the Grand Casino Mille Lacs in Onamia, Minnesota. (Doc. No. 46

(hereafter "Stip.") ¶ 3.)[1]  At the relevant time, it held primary liability insurance through Travelers Property Casualty Company of America ("Travelers") and a Commercial Excess Liability Policy (the "Policy") issued by RSUI.  (Id. ¶ 1.)  Under the Policy, RSUI agreed to pay "those sums[] in excess of" the limits of New Horizon's primary coverage through Travelers that New Horizon became "legally obligated to pay as damages because of injury to which [the Policy] applies."  (Id. Ex. E at 10.)  The Policy excluded from coverage any liability arising out of (i) "the actual or threatened 'sexual abuse or molestation' by anyone" as well as (ii) the negligent supervision "of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by" the sexual-abuse exclusion (the "Exclusion").  (Id. at 11.)  The Policy further defined "sexual abuse or molestation" as the "physical, mental or moral harassment or assault of a sexual nature against any person."  (Id.)  RSUI enjoyed the right to "participate in the defense of claims or suits against [New Horizon] seeking damages because of injury to which [the Policy] may apply."  (Id. at 19.)

On January 23, 2008, an incident occurred between two minor children, J.K. and N.B., while under New Horizon's supervision at Kids Quest.  (Id. ¶¶ 2–3.)  J.K. (age 3) claimed that N.B. (age 9) had assaulted him physically and sexually.  (Id.)  After the incident, J.K.'s parent sued New Horizon in the Hennepin County District Court (the "Underlying Lawsuit"), alleging that New Horizon negligently supervised J.K. and N.B, resulting in a physical and sexual assault.  New Horizon tendered the claim to Travelers and RSUI, and "RSUI does not dispute that it received timely notice of the claim."  (Id.

---

[1] The parties have stipulated to many of the relevant facts.

¶¶ 4–5.) Travelers, as New Horizon's primary insurer, defended it in the Underlying Lawsuit under a reservation of rights, while RSUI did not communicate its position regarding coverage under the Policy. (Id. ¶¶ 4, 6.)

The Underlying Lawsuit proceeded to trial in January 2015, where New Horizon stipulated as follows:

> On January 23, 2008, [J.K.], then age 3, was left in the care, custody, and control of the [New Horizon] drop-in daycare facility . . . located on the premises of the Grand Casino Mille Lacs. While he was there, [J.K.] was assaulted by another male child at the daycare center who was 9 years old.
>
> [New Horizon] admits that it owed a duty to [J.K.] and that it was solely responsible for his supervision, safety and security while he was in [its] daycare facility. And that it was negligent and failed to fulfill those obligations to [J.K.] on January 23, 2008.
>
> [New Horizon] has accepted responsibility to pay for all the damages that the jury in this case finds to be sustained by [J.K.] as a result of the incident or incidents that occurred while he was at the [New Horizon] facility.
>
> However, [New Horizon] disputes the nature, type, and extent of [J.K.]'s injuries and the damages arising from the incidents.

(Id. ¶ 8.) Prior to entering this stipulation, a Travelers representative discussed it with RSUI's claims representative, John Graham, who "wrote that the strategy made sense to him." (Id. ¶ 9.) No RSUI representative participated in the trial, but Travelers provided RSUI updates. (Id. ¶ 10.) After hearing evidence on J.K.'s damages, on January 30, 2015, a jury awarded over $13 million, an amount that exceeded the limits of New Horizon's coverage through Travelers. (Id. ¶ 11.) However, the jury did not—and was not asked to—specify what portion of the award resulted from a sexual assault, if any.

Five days after the jury's verdict, RSUI issued a reservation of rights letter, providing that the verdict "rendered in [the Underlying Lawsuit] . . . raises serious coverage issues under the [Policy]." (Id. ¶ 12 & Ex. B.) Specifically, RSUI took the position that the Underlying Lawsuit "may be barred from coverage by the application of the . . . Exclusion." (Id. Ex. B.)

Meanwhile, New Horizon filed a motion for a new trial in the Underlying Lawsuit. (Id. ¶ 16.) The court granted the motion and, in November 2015, a second trial occurred. (Id.) Travelers again supplied primary defense counsel, but this time, RSUI played a more active role; it hired a jury consultant to work with the defense team, and Graham observed portions of the trial. (Id. ¶¶ 17, 20.) As in the first trial, New Horizon stipulated to liability and tried only the issue of damages. (Id. ¶ 18.) After hearing the evidence, the second jury awarded $6,032,585, composed of damages for J.K.'s past and future healthcare expenses and "pain, disability, embarrassment and emotional distress." (Id. ¶ 21.) Once again, the jury did not (and was not asked to) specify what portion of the award, if any, arose from a sexual assault.

Travelers paid $4,192,350.75 toward the judgment (the limits of New Horizon's policy plus interest) (id. ¶ 23), and New Horizon turned to RSUI for the remainder. RSUI denied coverage, claiming that, "[b]ased upon the evidence presented at trial . . . and the damages awarded by the jury, the . . . Exclusion likely bars coverage for the amount of a judgment . . . exceeding the limits of the Travelers policies." (Id. Ex. C.) It then commenced this action, seeking a declaration that the Exclusion defeats coverage. New Horizon has counterclaimed, alleging RSUI breached the Policy and the implied

covenant of good faith and fair dealing. Both parties now move for summary judgment. The Motions have been fully briefed and are ripe for disposition.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of showing the material facts in the case are undisputed. Id. at 322; Johnson v. Wheeling Mach. Prod., 779 F.3d 514, 517 (8th Cir. 2015). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Ryan v. Armstrong, 850 F.3d 419, 424 (8th Cir. 2017); Letterman v. Does, 789 F.3d 856, 858, 861 (8th Cir. 2015). The nonmovant may not rest on allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Nationwide Prop. & Cas. Ins. Co. v. Faircloth, 845 F.3d 378, 382 (8th Cir. 2016).

Where the Court confronts cross-motions for summary judgment, this approach is only slightly modified. When considering RSUI's Motion, the Court views the record in the light most favorable to New Horizon, and when considering New Horizon's Motion, the Court views the record in the light most favorable to RSUI. "Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact." Seaworth v. Messerli, Civ. No. 09-3437, 2010 WL 3613821, at *3 (D. Minn. Sept. 7, 2010) (Kyle, J.), aff'd, 414 F. App'x 882 (8th Cir. 2011).

## ANALYSIS

The Court begins with the terms of the Policy. Travelers Indem. Co. v. Bloomington Steel & Supply Co., 718 N.W.2d 888, 894 (Minn. 2006).[2] In Minnesota, courts apply the plain and ordinary meaning of unambiguous policy terms. Id. The insured bears the initial burden of proving that a policy covers a certain claim. Id. If it does so, the burden then shifts to the insurer to demonstrate that the claim falls within a policy exclusion, thereby defeating coverage. Id. Here, the parties have stipulated that the Underlying Lawsuit falls within the Policy's insuring clause and is therefore covered. (Stip. ¶ 27.) However, RSUI argues—and bears the burden of proving—that the Exclusion defeats coverage. To succeed, it must put forth evidence that the jury awarded damages for an actual or threatened sexual abuse, as required by the Exclusion's express terms. (Id. Ex. E at 11.)

RSUI simply cannot do so. It has submitted no evidence that the jury determined sexual abuse had occurred or that one cent of the award was based on such a determination. As noted, RSUI consented to New Horizon's stipulation in the Underlying Lawsuit that an "assault" had occurred. Hence, the jury made no factual findings regarding the incident between J.K. and N.B., including whether a *sexual* assault had taken place. In fact, there is no evidence RSUI or New Horizon even *attempted* to put this question before the jury, and neither party has articulated an explanation for this failure. See NewMech Cos., Inc. v. Transp. Ins. Co., Civ. No. 04-4484, 2006 WL

---

[2] The parties cite Minnesota law in their memoranda and neither has asked the Court to apply a different state's law. See BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003).

2632096, at *14 (D. Minn. Sept. 12, 2006) (Frank, J.) ("The Court is troubled by this case because it was entirely avoidable. The parties are all responsible for the failure to request that the arbitrators make findings of fact" sufficient to allocate an award.). Instead, they now turn to this Court to unscramble the egg. In the absence of an allocated award or jury interrogatory, however, there is no evidence any portion of the award arose from sexual abuse.

In an attempt to rectify this failure, RSUI cites the trial record from the Underlying Lawsuit and, in particular, evidence from which the jury *may* have concluded sexual abuse had occurred. (Pl.'s Mem. in Supp. 1, 4–6.) But *evidence* does not equate to a *finding*, or an award of damages based upon it. Jurors are free to believe or disbelieve evidence and make credibility determinations based on their first-hand evaluation of witness testimony. With no insights into the jury's method of awarding damages, and no effort by anyone—including RSUI—to ask the jury to parcel out its award, any conclusion at this stage that same or all of the damages arose from sexual abuse— whether by the undersigned or a new jury—would constitute pure and unfettered speculation. Indeed, RSUI acknowledged as much at oral argument: "[T]rying to go back now . . . and determine how those damages should be allocated, we just question whether that's feasible." (Hrg. Tr. 9.)[3]

---

[3] That acknowledgement was consistent with RSUI's pre-litigation position, as on two occasions prior to this lawsuit, it acknowledged it could not determine whether the Exclusion applied: on February 5, 2015, it wrote New Horizon that the Exclusion "may" bar coverage, and on December 3, 2015, it wrote that the Exclusion "likely" barred coverage. (Stip. Exs. B-C.)

The court in <u>TIG Insurance Co. v. Premier Parks, Inc.</u>, No. CIV.A.02C04126JRS, 2004 WL 728858 (Del. Super. Ct. Mar. 10, 2004), confronted precisely the same problem. There, TIG Insurance Company ("TIG") sought a judgment declaring that its insured's failure to obtain an allocated jury award in third-party litigation defeated coverage. TIG argued, as RSUI does here, that "[b]ecause the jury did not allocate . . . between covered and non-covered claims, . . . the Court must either conclude that no coverage is available . . . or, alternatively, must allocate the damages in a manner consistent with the evidence presented" to that jury. <u>Id.</u> at *1.

The court squarely rejected TIG's argument: "[T]he Court cannot reasonably be expected to perform a post-verdict allocation of damages as between covered and non-covered claims when the record provides little, if any, evidence of the jury's methodology in reaching its damages awards." <u>Id.</u> Despite having received records from the underlying trial, <u>TIG Insurance</u> refused to revisit the jury's determination of damages and allocate its award:

> The Court has no basis upon which to make a logical assessment of the jury's purpose when it awarded lump sum damages. And the Court will not engage in unguided speculation with respect to this issue, particularly when the dilemma now confronting TIG is of its own making.

<u>Id.</u> at *8. Because it was undisputed that a portion of the award was covered, and TIG had no evidence "that the . . . verdict included damages for non-covered acts," the court held that the "entire . . . award relates to a covered claim" and "coverage should be afforded." <u>Id.</u> This Court finds <u>TIG Insurance</u> persuasive and perceives no reason why a different result should obtain here.

RSUI relies upon Remodeling Dimensions, Inc. v. Integrity Mutual Insurance Co., 819 N.W.2d 602 (Minn. 2012), to support the notion that the Court can now revisit the jury's determination in the Underlying Lawsuit. That case involved an insurance-coverage dispute over an unallocated arbitration award. The Minnesota Supreme Court first reviewed the claims presented to the arbitrator and concluded that "the arbitration award may be attributable, in whole or in part, to a covered claim." Id. at 610–613. The Court then held, under certain conditions, that "both parties may present evidence and the district court must, as best it can, establish the allocation the arbitrator would have made if allocation had been requested." Id. at 618. However, in the undersigned's view, Remodeling Dimensions is inapposite because it dealt with an arbitration award rather than a jury award. District courts commonly review arbitration awards; in fact, such a review is contemplated by statute. See 9 U.S.C. § 9. Here, however, the parties have not cited, and the Court has not located, any Minnesota authority for the proposition that a general jury award is subject to the same type of *post hoc* allocation. Nor, in the Court's view, should one be—jury deliberation and decision-making are sacrosanct, and the Court possesses no divining rod capable of determining the proportion of damages awarded on covered versus non-covered claims.

Furthermore, the Court deems it significant that RSUI had abundant opportunity in the Underlying Lawsuit to flesh out the issue it now relies upon to defeat coverage. Indeed, the absence of evidence on this question is striking given RSUI's involvement in the case. It is undisputed RSUI enjoyed a right under the Policy to participate in the defense of any claims brought against New Horizon. (Stip. Ex. E at 19.) New Horizon

timely tendered the Underlying Lawsuit to RSUI (Stip. ¶¶ 5–6), and despite receiving no coverage determination from RSUI, it provided RSUI a copy of trial counsel's claim analysis and information on settlement discussions.  (Graham Dep. 69–71, 73, 78–79.) RSUI consented to stipulate to an "assault."[4]  (Stip. ¶ 9.)  Then, after the first jury awarded over $13 million, far exceeding New Horizon's coverage through Travelers, RSUI issued a reservation-of-rights letter expressly raising the issue of the Exclusion.  (See id. Ex. B.)  It then took an even larger role in the second trial—it attended a mediation between J.K. and New Horizon (on its own volition) (Pfeifer Decl. Ex. L), approved Travelers's choice of trial counsel (Graham Dep. 129), and hired its own jury consultant, Adam Boesen (id. 147–159).  Boesen aided in preparing jury questionnaires and *voir dire* as well as in the selection of jurors.  (Boesen Dep. 39–40.)  He also attended the first and second weeks of the second trial, along with Graham.  (Id. 46; Graham Dep. 157–158.)

Despite RSUI's (i) right to participate, (ii) involvement in trial preparation, (iii) consent to stipulate to an "assault," (iv) knowledge that a verdict might exceed the limits of New Horizon's coverage with Travelers, and (v) awareness that the Exclusion could apply, it took no steps to discover—and, hence, it has no evidence—whether the jury concluded that sexual abuse had occurred.  This record "darkened by ambiguity," TIG Ins. Co., 2004 WL 728858, at *8, compels the conclusion that RSUI cannot now show the Exclusion bars coverage.  See Pharmacists Mut. Ins. Co. v. Myer, 993 A.2d

---

[4] RSUI complains that it "was not provided with the actual language of the stipulation before the first trial" (Pl.'s Mem. in Opp'n 7), but it cites no evidence that it requested a copy.  Instead, RSUI's representative, Graham, simply "wrote that the strategy made sense to him."  (Stip. ¶ 9.)

413, 419 (Vt. 2010) (absent contemporaneous allocation, insurer "cannot meet its burden to demonstrate that the award was for [claims] entirely excluded from coverage under the policy"); Liquor Liab. Joint Underwriting Ass'n of Mass. v. Hermitage Ins. Co., 644 N.E.2d 964, 969 (Mass. 1995) ("Hermitage cannot satisfy [its] burden, and any attempt on its part to do so would be speculative and arbitrary, essentially amounting to an attempt to determine the particular amount that happened to be in the jur[ors'] mind[s] as [they] returned the verdict.") (internal quotations and citations omitted); Butterfield v. Giuntoli, 670 A.2d 646, 658 (Pa. Super. Ct. 1995) (where insurer "fully participated in litigation short of entering [its] appearance" but did not "pursue any means available to [it]" to obtain an allocated verdict, it cannot, as a matter of law, prove that an exclusion applies).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that New Horizon's Motion for Partial Summary Judgment (Doc. No. 47) is **GRANTED** and RSUI's Motion for Partial Summary Judgment (Doc. No. 80) is **DENIED**.

This should end the matter. However, the parties' Motion papers do not address the precise impact of the Court's determination that the Exclusion is inapplicable. For example, what becomes of New Horizon's claim for breach of the implied covenant of good faith and fair dealing? Accordingly, the parties shall meet and confer regarding what remains of this matter in light of the Court's decision, whether judgment should be entered, and if so, its precise form. The parties shall file written positions with the Court

- 11 -

regarding these issues, either jointly or separately, by August 17, 2017. This is not an invitation to reargue the propriety of summary judgment, and no further submissions (whether by memorandum, letter, affidavit, or otherwise) will be permitted on the matters addressed herein absent further Order of the Court.

Date: August 4, 2017             s/ Paul A. Magnuson
                                 PAUL A. MAGNUSON
                                 United States District Judge