## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

RSUI INDEMNITY CO.,                                    Civil No. 16-28 (JRT/TNL)

                          Plaintiff,

                                                    **MEMORANDUM OPINION AND ORDER**
v.                                                  **GRANTING PLAINTIFF'S PARTIAL**
                                                    **MOTION FOR SUMMARY JUDGMENT &**
NEW HORIZON KIDS QUEST, INC.,                        **DENYING DEFENDANT'S MOTION FOR**
                                                    **SUMMARY JUDGMENT**

                          Defendant.

---

Jo Allison Stasney and J. Richard Harmon, **THOMPSON, COE, COUSINS, &
IRONS LLP**, 700 North Pearl Street, Twenty-Fifth Floor, Dallas, TX 75201;
James S. Reece, **REECE LAW LLC**, 80 South Eighth Street, Suite 900,
Minneapolis, MN 55402; and David F. Herr and Jevon Bindman, **MASLON
LLP**, 3300 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN
55402, for plaintiff.

Katie C. Pfeifer, Andrew B. Brantingham, Brian B. Bell, and Vernle C.
Durocher, Jr., **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500,
Minneapolis, MN 55402, for defendant.

Plaintiff RSUI Indemnity Company ("RSUI") seeks a declaratory judgment that the

Sexual Abuse and Molestation Exclusion (the "Exclusion") of the insurance policy issued

to Defendant New Horizon Kids Quest, Inc. ("New Horizon") excludes coverage for

damages owed by New Horizon in relation to an incident of assault at one of its day care

facilities.  On appeal from a prior grant of summary judgment to New Horizon, the Eighth

Circuit held that RSUI must be afforded an opportunity to prove that the underlying

verdict includes excluded damages.

Now, on remand, the parties have refiled motions for summary judgment. New Horizon seeks summary judgment on the basis that the Exclusion does not apply as a matter of law, while RSUI seeks partial summary judgment on the basis that the Exclusion applies to at least some portion of the damages awarded. Because the Court finds that application of the Exclusion is not precluded and, based on the evidence presented during the state court trial, no reasonable jury would not have awarded some portion of the damages based on the sexual nature of the underlying assault, the Court will deny New Horizon's motion and grant RSUI's motion. However, the Court concludes that RSUI bears the burden of proving the appropriate allocation between covered and excluded damages at trial by a preponderance of the evidence.

## BACKGROUND

### I.    FACTUAL BACKGROUND

#### A.    The Underlying Lawsuit

New Horizon operated an hourly drop-in childcare facility, Kids Quest Grand Casino Mille Lacs. (Joint Stipulation of Facts ("Stip.") ¶ 3, Nov. 2, 2020, Docket No. 171.) On January 23, 2008, a three-year-old, J.K., was assaulted by a nine-year-old while in New Horizon's care at Kids Quest Grand Casino Mille Lacs. (Stip. ¶ 3.) The three-year-old, through his mother, sued New Horizon in Minnesota state court, alleging a number of negligence-based claims, including failure to supervise children in the facility and failure to supervise and train employees. (*Id*. ¶¶ 2–3.) New Horizon stipulated to liability, but

contested the nature and extent of damages.  (*See* Decl. Katie C. Pfeifer ("Pfeifer Decl.") ¶ 5, Ex. D ("NH Trial Tr. Excerpts") at 3–4, Nov. 2, 2020, Docket No. 169-3.)

The underlying lawsuit was tried twice.  After the first trial, New Horizon moved for a new trial based on plaintiff's attorney misconduct, and the motion was granted. (Stip. ¶ 16.)  At the second trial—from which the present matter arises—the sole issue was damages, as New Horizon had conceded liability.  (*Id.* ¶ 18.)  Because the questions presented here depend on the evidence presented at trial, it is summarized below.

Perhaps foremost, the jury viewed security footage of the assault.  (*See* RSUI Ex. A ("Trial Tr. Excerpts") at 20, May, 2, 2017, Docket No. 82-2.)  The video showed prolonged and repeated physical assault of J.K., lasting around an hour and a half.  (*See* Trial Tr. at 22.)  No sexual conduct was visible in the security tapes, but the perpetrator and victim were not always in view of the cameras, such as when in playground tunnels and the bathroom.  (*See* NH Trial Tr. Excerpts at 5–10; *id.* at 14.)

The jury heard testimony from witnesses who examined J.K., and to whom he described the assault shortly after it occurred.  For example, the jury heard about medical examinations of J.K. the day after the incident, including that a rape kit was collected, although not processed, and testimony from a doctor who examined J.K. and concluded that his condition after the assault was consistent with anal rape.  (Trial Tr. Excerpts at 8–10, 51–56; NH Trial Tr. Excerpts at 12–13.)

The jury viewed an interview conducted by child protection several days after the incident in which J.K. described repeated actual or attempted anal penetration by the nine-year-old.  (Trial Tr. Excerpts at 9.)  The child protection worker testified that in her opinion J.K. was sexually and physically assaulted.  (*Id.* at 16.)  The police officer who conducted the investigation testified that nothing in his investigation was inconsistent with J.K.'s description of a sexual assault.  (*Id.* at 19–21.)

The jury also heard from J.K.'s therapist who treated him for around a year and a half after the assault.  (*Id.* at 65–72.)  The therapist testified about the behaviors she observed in J.K. and how those aligned with her expectations for behavior in children who experienced physical and sexual trauma.  (*E.g.*, *id.* at 69–72.)

Each party also presented expert testimony regarding children and post-traumatic stress disorder ("PTSD").  Witnesses discussed reports of J.K.'s behavior after the incident, and analyzed how his behavior correlated to signs of PTSD, including how a child might process a sexual assault.  (*See, e.g.*, *id.* at 29–30, 32–37.)  The experts agreed that J.K. has PTSD from the assault, but disagreed about the causes of the PTSD, specifically whether or to what extent sexual assault contributed to the trauma, versus if severe physical assault alone could cause PTSD in a young child.  (*See, e.g.*, NH Trial Tr. Excerpts at 17–19.)

-4-

Additionally, although not evidence, counsel for J.K. in the underlying lawsuit also discussed the sexual aspects of the assault in both opening and closing statements. (*See* Trial Tr. Excerpts at 7–13; RSUI Ex. B at 3–4, May 2, 2017, Docket No. 82-3.)

The jury awarded J.K. more than $6 million in damages.[1] (Stip. ¶ 21.) The verdict was divided by type of expenses—such as past and future health care expenses, past and future pain and emotional distress—but the jury did not indicate whether the award of damages was for physical or sexual assault, or some combination thereof. (*See id.*)

**B.    RSUI's Policy and Participation in the Underlying Lawsuit**

At the time of the incident, New Horizon had a general liability and excess liability umbrella insurance policy through Travelers Property Casualty Company of America ("Travelers"), which covered an aggregate limit of $3 million,[2] and a commercial excess liability insurance policy through RSUI, with an $8 million limit. (*Id.* ¶ 1.) New Horizon tendered the claim from the incident to Travelers, and Travelers retained representation for New Horizon in the underlying lawsuit. (*Id.* ¶ 4.)

New Horizon informed RSUI of the lawsuit brought by J.K. in October 2012. (*Id.* ¶ 5.) RSUI did not provide a reservation of rights or coverage position letter, or otherwise

---

[1] In the present action, RSUI disclosed an expert witness who opined that a verdict of this size in a case about purely physical assault would be highly unusual. (*See* Ex. B at 14, Nov. 2, 2020, Docket No. 175-1.)

[2] Travelers paid $3 million, the limit of the combined general and umbrella policies, plus applicable interest, toward the damages awarded by the jury. (Stip. ¶ 23.) New Horizon paid the remainder of the judgment. (*Id.* ¶ 24.)

communicate a coverage position prior to the first trial in the underlying lawsuit. (*Id.* ¶ 6.) Under the policy, RSUI had a right to participate in New Horizon's defense. (*Id.* ¶ 29.) RSUI agreed to the trial strategy of conceding liability, but contesting the nature, type, and extent of damages. (*Id.* ¶¶ 8–9.)

In February 2015, after the first trial verdict, RSUI issued a reservation of rights letter for the first time. (Stip. ¶ 12, Ex. B, Nov. 2, 2020, Docket No. 171-2.) Despite agreeing to the strategy of stipulating to liability, RSUI noted that "while a dispute existed concerning whether J.K. was sexually assaulted, New Horizon made the decision to admit liability for J.K.'s alleged injuries[.]" (Ex. B at 1.) RSUI went on to state that the verdict "raises serious coverage issues" and "[b]ased upon the facts of the case, the damages awarded against New Horizon may be barred from coverage by the application of the Sexual Abuse or Molestation Exclusion." (*Id.* at 1–2.) The Exclusion states:

This insurance does not apply to any liability arising out of the:

1. Actual or threatened "sexual abuse of molestation" by anyone;
2. Negligent:
   a. employment;
   b. investigation;
   c. supervision;
   d. reporting to proper authorities, or failure to so report; or
   e. retention
   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by 1. above; or
3. Placement of a minor child in adoptive or foster home care.

> As used in this endorsement, "sexual abuse or molestation" shall mean physical, mental, or moral harassment or assault of a sexual nature against any person.

(*Id.* at 2.)  Although the letter only tentatively suggested application of the Exclusion, RSUI has since stated that there were no circumstances in which RSUI would have agreed to coverage.  (Pfiefer Decl. ¶ 11, Ex. J ("Graham Dep.") at 143:13–144:13, Nov. 2, 2020, Docket No. 168-7.)

After the first trial, it appears RSUI became more involved in New Horizon's defense.  For example, RSUI attended a mediation, (Graham Dep. at 109:7–110:15); intended to hire its own counsel for the second trial but was instead satisfied with Travelers' attorneys, (*id.* at 129:19–23); retained a jury consultant, (*id.* at 153:14–16, 155:10–18); and provided comments and recommendations regarding trial strategy leading up to and during the second trial, (*e.g.*, Pfeifer Decl. ¶ 3, Ex. B. at 105:18–108:20, Nov. 2, 2020, Docket No. 169-1 (noting that trial preparation was a "collaborative effort").)

After the second verdict, RSUI again sent a reservation of rights letter citing the Exclusion.  (Stip. ¶ 22.)  New Horizon disputed RSUI's position and demanded that RSUI indemnify New Horizon for the portion of the judgment exceeding Travelers' limits.  (*Id.*)  RSUI has not paid any portion of the judgment.  (*See id.* ¶ 24.)

II.   **PROCEDURAL HISTORY**

RSUI initiated this declaratory judgment action to determine whether the Exclusion applies such that it need not indemnify New Horizon for any damages arising from the underlying lawsuit or, in the alternative, that application of the Exclusion requires the damages to be allocated and New Horizon bears the burden of proof as to the allocated amounts.  (Compl. ¶¶ 14–15, Jan. 6, 2016, Docket No. 1.)  New Horizon filed a counterclaim against RSUI, seeking damages for breach of contract and breach of the duty of good faith and fair dealing, asserting that RSUI is obligated to indemnify New Horizon.  (Answer & Countercl. ¶¶ 25–37, Feb. 23, 2016, Docket No. 25.)

After discovery, the parties filed motions for summary judgment, and the Court concluded that, as a matter of law, RSUI could not prove that the Exclusion applied without an allocated award demonstrating that the jury determined sexual abuse had occurred or a jury interrogatory.  *RSUI Indem. Co. v. New Horizon Kids Quest, Inc.*, 274 F. Supp. 3d 910, 913 (D. Minn. 2017).

RSUI appealed and the Eighth Circuit reversed, finding that RSUI must be afforded an opportunity to prove that the jury's unallocated award included excluded claims (sexual assault) as well as covered claims (physical assault).  *RSUI Indem. Co. v. New Horizon Kids Quest, Inc.*, 933 F.3d 960, 966 (8th Cir. 2019).  The Eighth Circuit remanded the case so that the Court could give RSUI such an opportunity, and, if RSUI establishes that the award included damages for excluded claims, for the Court to properly allocate

-8-

the award.  *Id.*  The Eighth Circuit declined, however, to resolve the issue of which party

bears the burden to prove allocation, finding that it "should be decided by the district

court in the first instance."  *Id.*

On remand, the Court ordered the parties to submit motions for summary

judgment including briefing on (1) whether the jury's unallocated award from the

underlying lawsuit included excluded as well as covered claims; (2) whether allocation

must be decided in a jury trial if the Court does not grant summary judgment on that

issue; and (3) which party bears the burden to prove allocation if the Court or a jury

concludes that the unallocated damages award from the underlying lawsuit includes

excluded claims.  (Order at 3, Aug. 3, 2020, Docket No. 157.)  These motions are now

before the Court.  (Def.'s Mot. Summ. J., Nov. 2, 2020, Docket No. 164; Pl.'s Mot. Partial

Summ. J., Nov. 2, 2020, Docket No. 173.)

**DISCUSSION**

**III.   STANDARD OF REVIEW**

Summary judgment is appropriate when there are no genuine issues of material

fact, and the moving party can demonstrate that it is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and

a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a

verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A court considering a motion for summary judgment must view the facts in the light most

favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, the Court may not make credibility determinations or weigh the evidence before it. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## II.   WHETHER THE JURY AWARDED DAMAGES FOR EXCLUDED CLAIMS

The Court first addresses the dispositive motions filed by each party on whether the verdict in the underlying lawsuit included damages for excluded claims under New Horizon's policy with RSUI. As noted above, it is undisputed that there was some evidence presented at trial about an alleged sexual assault, yet the special verdict form did not ask the jury to differentiate between damages attributed to the general physical versus sexual nature of the assault. When there is no factfinding in the liability suit to facilitate allocation between covered and excluded claims, "parties can present testimony from attorneys involved in the underlying lawsuits, evidence from those lawsuits, expert testimony evaluating the lawsuits, a review of the underlying transcripts, or other

admissible evidence." *UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 863 (8th Cir. 2017).

Relevant here, after the insured has established a prima facie case of coverage, the burden is on the insurer to establish that an exclusion applies to preclude coverage. *Domtar, Inc. v. Niagara Tire Ins. Co.*, 563 N.W.2d 724, 736 (Minn. 1997). Exclusions are read narrowly against the insurer. *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn. 1992). To survive summary judgment, the insurer must present a non-speculative basis that the award should be allocated between covered and excluded claims. *UnitedHealth*, 870 F.3d at 863. Here, RSUI must demonstrate that it is beyond speculation that some portion of the verdict must have been based on excluded conduct.

### A.   Applicability of the Exclusion

At the outset, New Horizon offers several unavailing legal arguments as to why, as a matter of law, the Exclusion cannot apply to any portion of the damages awarded. First, New Horizon maintains that the Court cannot conclude that the verdict encompassed excluded damages because New Horizon's liability did not "aris[e] out of" "harassment or assault of a sexual nature," (Stip. ¶ 28), since New Horizon would have been liable to J.K. for physical assault damages, even absent sexual conduct. Minnesota courts have interpreted the "arising out of" language in insurance exclusions to indicate a "but-for" causation standard. *See Faber v. Roelofs*, 250 N.W.2d 817, 822 (Minn. 1977). The standard is "comprehensive and broad" and requires only "a cause and result

-11-

relationship," not proximate cause, *id.*, and "has also been held to mean originating from, or having its origin in, growing out of, or flowing from," *Murray v. Greenwich Ins. Co.*, 533 F.3d 644, 550 (8ᵗʰ Cir. 2008) (citing *Associated Indep. Dealers, Inc. v. Mut. Serv. Ins. Cos.*, 229 N.W.2d 516, 518 (Minn. 1975)).

Here, New Horizon obscures the substantive issue of whether the jury awarded damages based on sexual assault with its but-for causation argument.  In this case, even if the jury may have awarded some damages based on physical assault alone, if the Court finds that the jury awarded any additional damages because of the evidence of sexual conduct, then sexual assault is the but-for cause of those additional damages, and New Horizon's liability would therefore arise out of sexual conduct.  Thus, the Court cannot resolve the matter on but-for causation grounds without first examining the record of the underlying lawsuit, and the analysis must continue.

Along similar lines, New Horizon argues that the concurrent cause doctrine precludes application of the Exclusion.  Under Minnesota law, if a covered and an uncovered cause could have operated independently to cause the actual injury that occurred, the claim is covered despite the existence of an uncovered component. *Midwest Family Mut. Ins. Co. v. Schmitt*, 651 N.W.2d 843, 848 (Minn. Ct. App. 2002) (citing *Seefeld*, 481 N.W.2d at 65).  The doctrine only applies, however, when the same injury or loss could have been caused by a covered cause independent of the noncovered cause. *Seefeld*, 481 N.W.2d at 65.  Within the context of this matter, the actual injury

-12-

requirement means that the concurrent cause doctrine does not apply if RSUI can establish that the jury awarded any portion of the damages based on evidence of sexual conduct. If so, the separate, physical assault alone would not have led to the same injury or loss, and accordingly, the concurrent cause doctrine would not preclude application of the Exclusion. As such, the Court cannot resolve the matter without examining the record of the underlying lawsuit.

Lastly, New Horizon asserts that the Exclusion cannot apply because of the perpetrator's young age. New Horizon contends that the Exclusion incorporates criminal law definitions of "assault of a sexual nature," and, under Minnesota criminal law, a nine-year-old is neither capable of committing crimes nor subject to delinquency. Furthermore, New Horizon asserts that the Exclusion only applies to intentional conduct and, although sexual intent may be inferred in some cases, New Horizon posits that the Court should not infer intent where the perpetrator is so young.

Minnesota courts interpret different types of insurance exclusions differently, and the arguments New Horizon offers have no bearing on a sexual abuse and molestation exclusion. First, the Exclusion is also not a criminal acts exclusion, and although Minnesota courts have relied on criminal law to define terms in criminal exclusions, *see, e.g.*, *Wheetley v. Allianz Life Ins. Co.*, No. A04-402, 2004 WL 2221735, at *2 (Minn. Ct. App. Oct. 5, 2004), it is unlikely that Minnesota courts would use criminal law to define terms

in a sexual abuse or molestation exclusion.[3] *Cf. SECURA Supreme Ins. Co. v. M.S.M.*, 755 N.W.2d 320, 325 (Minn. Ct. App. 2008) (distinguishing between criminal acts and intentional acts exclusions). So although a nine year old perpetrator would not be subject to criminal prosecution, *see* Minn. Stat. § 609.055, or be considered delinquent, *In re Welfare of S.A.C.*, 529 N.W.2d 517, 519 (Minn. Ct. App. 1995), the perpetrator's age does not have the same effect on application of the Exclusion.[4]

The Exclusion is also not an intentional acts exclusion and its plain language does not include an intent element. The Court declines to graft an additional intent requirement onto the clause. *See SECURA*, 755 N.W.2d at 325; *see also Edgley v. Lappe*, 342 F.3d 884, 888–89 (8th Cir. 2003) (explaining that insurance policies are interpreted using contract principles and finding that the district court erred by looking beyond the plain language of a policy). In other words, to trigger the Exclusion, the insurer must only prove that the conduct itself falls within the Exclusion's terms, irrespective of the actor's

---

[3] *Accord National Cas. Co. v. Young*, No. 07-4836, 2009 WL 2170105, at *6–7 (E.D. Pa. July 17, 2009) (interpreting the term "sexual act" in a sexual abuse or molestation exclusion by reference to Black's Law Dictionary rather than criminal law and noting that such exclusions are often broadly applicable).

[4] Minnesota courts have considered how other types of legal capacity, such as incapacitation or mental disability, affect application of intentional act insurance exclusions, and have declined to directly applying criminal capacity analysis to insurance exclusions when the insured is mentally ill. *See State Farm Fire & Cas. Co. v. Wicka*, 474 N.W.2d 324, 330 (Minn. 1991) (noting that statutory codification of cognitive incapacity defenses in criminal cases "provides but a partial answer when dealing within the realm of insurance law."). Thus, the Court finds that Minnesota courts would likely also decline to directly apply criminal law minimum age limits to insurance exclusions.

purpose. *See SECURA*, 755 N.W.2d at 325 (holding that the perpetrator's intent to cause harm was irrelevant because conduct fell with the meaning of the exclusion). Accordingly, the Court imposes neither an intent requirement nor a minimum age requirement for the Exclusion to apply. Rather, RSUI need only demonstrate that the jury found that assault of a sexual nature occurred for the Exclusion to apply. *See Evanston Ins. Co. v. Johns,* 530 F.3d 710, 714 (8th Cir. 2008) (applying an exclusion for claims arising out of "physical conduct . . . of a sexual nature" without regard for the perpetrator's understanding because the contact itself was sexual in nature).

Although there may be other instances in which there is some doubt about whether an assault was "of a sexual nature" when the phrase is given its ordinary meaning, this is not such a case. J.K. described an assault which included repeated attempted or actual anal penetration, and no one disputed J.K.'s description at trial. The assault was undoubtedly "assault of a sexual nature," even if the perpetrator did not commit the acts with sexual intent or motive. The Court thus finds that the Exclusion may apply in this case.

B.    Evidence Presented at Trial

Having found that none of New Horizon's legal theories preclude application of the Exclusion, the Court now turns to the evidence presented at trial to determine whether there is a non-speculative basis to conclude that the jury awarded damages based on the sexual assault.

-15-

As described above, multiple trial witnesses discussed sexual aspects of the assault and J.K.'s description of his experience, and opined as to whether J.K.'s PTSD was attributable to severe physical assault and/or sexual trauma.  Overall, RSUI submitted at least 140 pages of trial transcript that include statements by attorneys, descriptions of evidence, and testimony about the alleged sexual violation experienced by J.K. and its effects on him going forward.

On the other hand, New Horizon points out that the 140 pages submitted is out of a total 1600 pages of trial transcript.  New Horizon also maintains that the evidence, such as the security footage, was so compelling and explicit as to a physical assault having occurred, that the Court should not speculate about whether the jury may have also relied on less explicit evidence of sexual conduct.

When determining if the verdict in the underlying lawsuit includes any damages based on the sexual aspects of the assault, there is no minimum amount of the award that must be attributed to such conduct in order for the case to move to the allocation phase.  Here, even if the evidence about the sexual aspects of the assault was a relatively small portion of the trial, as New Horizon suggests, the Court finds that no reasonable jury would have disregarded that evidence in deliberation, particularly because J.K.'s description of the alleged sexual conduct was undisputed.  Accordingly, there is a non-speculative basis to conclude that the jury awarded some portion of the verdict based on

the fact that there was violative contact of a sexual nature suffered upon J.K. by the

perpetrator, and that this contact caused some of J.K.'s ongoing psychological effects.

As such, RSUI has satisfied its burden to establish that the jury awarded some

portion of the damages—even if ultimately a small portion—based on evidence of an

excluded claim, and the Court will therefore grant RSUI's Motion for Partial Summary

Judgment and deny New Horizon's Motion for Summary Judgment.

### III.     BURDEN OF PROOF FOR ALLOCATION OF DAMAGES

Because the Court grants partial summary judgment for RSUI and the damages

awarded in the underlying lawsuit will need to be allocated, the Court must determine

which party shall bear the burden of proof at trial.  As an initial matter, the Court also

requested that the parties brief whether a trial on allocation should be a bench or jury

trial because there had been some dispute about the proper format.  However, the

parties now agree to proceed to a jury trial on allocation.  (See Def.'s Mem. Opp. at 7 n.1,

Nov. 23, 2020, Docket No. 177.)  Because New Horizon included a demand for jury trial

with its counterclaim, and the parties have not agreed to withdraw the demand, the

parties are entitled to a jury trial.[5]  Fed. R. Civ. P. 38(b); *see also Northgate Homes, Inc. v.*

---

[5] The Court notes that within the context of this case, a bench trial would likely be more efficient than a jury trial, as no additional fact-finding is needed.  A bench trial would also comport with state law, which provides that application of an insurance policy is the role of the court.  *See Comm. Bank v. West Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015) ("The interpretation of an insurance policy and the application of the policy to the undisputed facts of a case are

*City of Dayton*, 126 F.3d 1095, 1098–99 (8ᵗʰ Cir. 1997) ("Federal procedural law governs the question of whether [a party] has a right to a jury trial on its claim for declaratory judgment.").

The next question is which party will bear the burden of allocation between covered and excluded claims.  Under Minnesota law, although the insured generally has the burden of proving allocation of damages between covered and uncovered claims by a preponderance of the evidence, that burden may shift to the insurer if certain conditions are met.  *See Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 618 (Minn. 2012).  The Minnesota Supreme Court has not addressed the burden of allocation in the precise situation presented here: a coverage dispute with covered and excluded claims involving an excess insurer that did not control the defense of the insured in the underlying litigation.  Yet the Eighth Circuit, on appeal of the instant case, concluded that Minnesota courts would apply the allocation analysis established by *Remodeling* to determine the burden.  *See RSUI Indem. Co.*, 933 F.3d at 966.

The *Remodeling* court outlined four estoppel-based conditions which, if established, result in the burden shifting from the insured to the insurer to allocate an

---

questions of law[.]"); *see also See Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 618 (Minn. 2012) (instructing the district court to establish allocation of an award). Nonetheless, whether to conduct a jury trial or a bench trial is not within the Court's discretion since the parties have exercised a jury trial demand, and therefore the interests of efficiency and judicial economy cannot prevail without the parties' agreement.

award post-judgment: (1) the insurer had a duty to notify the insured of its interest in obtaining a written explanation of the damages award; (2) it was possible to obtain a written explanation of the award; (3) the insurer had the opportunity but failed to properly notify the insured; and (4) the insurer's failure caused prejudice to the insured.[6] *See Remodeling*, 819 N.W.2d at 617–19.  The insured has the burden to demonstrate that the conditions have been met.  *See id.* at 618.  The Court will apply the four conditions to predict how the burden should be assigned in this case.

### A.    Duty to Notify

An insurer has the duty "to disclose to its insured the insured's interest in obtaining a written explanation of the award that identifies . . . the portions of the award attributable to each" claim or theory of recovery when the insurer "accepts the defense of [a] claim under a reservation of rights that includes covered and noncovered claims." *Id.* at 618.  Although *Remodeling* only specifically addressed the duty to notify when an

---

[6] RSUI argues that the burden cannot shift because it is an excess insurer without a duty to defend, and in *Remodeling*, the court stated that the burden "does not shift to the insurer unless the insurer had an affirmative duty to defend the underlying claims." *Remodeling*, 819 N.W.2d at 618.  While this quotation is from *Remodeling*, it is not the holding of the case, but comes from a parenthetical explaining a West Virginia Supreme Court case. *See id.* at 617–18.  Rather, the *Remodeling* court clarified that the duty to notify an insured of its interest in a written explanation of damages for allocation "arises not from [the insurer's] contractual duty to defend, if any, but from the equitable principal of estoppel." *Remodeling*, 819 N.W.2d at 617 (citation omitted).  Indeed, the Eighth Circuit instructed the Court to apply the fact-intensive analysis described in *Remodeling* despite the differences between that case and the present matter, confirming that not having a duty to defend is not dispositive for the burden of proof inquiry. *RSUI Indem. Co.*, 933 F.3d at 966.

insurer had the duty to defend, it did not hold that the duty to notify only exists for primary insurers with a duty to defend. *See RSUI Indem. Co.*, 933 F.3d at 966 (recognizing that *Remodeling*'s allocation analysis applies to excess insurers who do not control the defense). Rather, the *Remodeling* Court imposed a duty to notify on the insurer for two reasons: (1) because an insurer has a duty of good faith to its insured and the insurer uniquely knows the scope of coverage and exclusions, the notification duty prevents prejudice to the insured; and (2) the duty to notify is not onerous. *Remodeling*, 819 N.W.2d at 618–19.

Applying the two-part rationale, RSUI had a duty to notify New Horizon of its interest in a written explanation of the damages award. First, RSUI had a duty of good faith toward New Horizon, as RSUI uniquely knew the scope of the policy's coverage and exclusion, and intended to exercise the Exclusion despite only issuing a tentative reservation of rights. Additionally, RSUI's participation in New Horizon's defense without disclosing its intent to exercise the Exclusion creates the possibility of prejudice to New Horizon, such as if RSUI had attempted to steer the litigation in a direction that would make it easier to later disclaim coverage. The duty to notify is intended to eliminate such opportunities for prejudice to the insured.

Second, it would not have been onerous for RSUI to notify New Horizon of its interest in a written explanation. New Horizon informed RSUI of the underlying lawsuit more than three years before the verdict in the second trial, RSUI was present for and

assisted with portions of the defense, and RSUI provided New Horizon with a reservation of rights letter several months before the second trial.  RSUI had ample opportunity to notify New Horizon of its interest in a written explanation of the verdict, and it would not have been onerous to do so.  Therefore, the first condition is established.

###    B.    Ability to Obtain a Written Explanation of the Award

Next, the insured must affirmatively show "that a written explanation of an award is available under the applicable rules."  *Id.* at 618.  The Minnesota Rules of Civil Procedure allow for special verdicts and jury interrogatories which, if requested, would have allowed for a written explanation of the jury's award to facilitate allocation.  *See* Minn. R. Civ. P. 49.  The second condition is met.

###    C.    Failure to Notify

Third, the insurer must have "had the opportunity to provide timely notice to the insured" but failed "to make a timely disclosure of the insured's interest in obtaining a written explanation of the award."  *Remodeling*, 819 N.W.2d at 618–19.  It is undisputed that RSUI did not directly notify New Horizon of its interest in obtaining a written explanation before the jury's verdict in the underlying lawsuit and, as explained above, RSUI had the opportunity to provide such notice.  Therefore, the third condition is met unless RSUI's failure to notify is otherwise excused, which the Court finds no reason to do.  The Court disagrees with RSUI's position that New Horizon should have known that RSUI had an interest in a written explanation.  *Remodeling* does not establish an exception

to the duty to notify if the insured should have known to request a written explanation, and it is unlikely that the Minnesota Supreme Court would permit such an exception, as the court stressed that "the duty to notify is not onerous." *Id.* at 619. Thus, the third condition is also satisfied.

### D.      Prejudice to the Insured

Finally, to shift the burden of allocation, the insured must show that "prejudice was caused by the failure of the insurer to provide [] notice" of the insured's interest in obtaining a written explanation of the damages award. *Id.* at 618. Here, New Horizon was prejudiced by RSUI's failure to notify because New Horizon was unable to make an informed decision about whether to request an appropriate special verdict. It is possible that New Horizon would not have requested a written explanation, but "the insured is entitled to make the decision whether to seek an allocated [award]," *Remodeling*, 819 N.W.2d at 617, and the inability to do so because of the insurer's failure to notify is prejudicial.

Finding that the fourth condition is met, the Court concludes that the burden of allocation will shift from New Horizon to RSUI at trial as all four *Remodeling* conditions are satisfied.

### CONCLUSION

In sum, the Court grants RSUI's Motion for Partial Summary Judgment and denies New Horizon's Motion for Summary Judgment. Application of the Exclusion is not barred

by state law and, upon review of the record, the Court finds that no reasonable jury would have disregarded the evidence of assault of a sexual nature and ongoing psychological effects presented in the underlying lawsuit. Therefore, the case will proceed to trial on allocation of the damages between covered and excluded claims. Because RSUI had a duty to notify New Horizon of its interest in a written explanation of the verdict, and such an explanation could have been obtained, yet RSUI failed to notify New Horizon of its interest, which resulted in prejudice to New Horizon in defending the underlying lawsuit, RSUI will bear the burden of proof for allocation in the damages trial.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. New Horizon's Motion for Summary Judgment [Docket No. 164] is **DENIED;**

2. RSUI's Motion for Partial Summary Judgment [Docket No. 173] is **GRANTED;**

3. Unless the parties agree otherwise, the matter will proceed to a jury trial on the issue of allocation of the damages award in the underlying lawsuit; and

4. RSUI will bear the burden of proof for allocation of damages at such trial.

DATED: April 1, 2021
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court